UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

In re:

PB LIFE AND ANNUITY CO., LTD., *et al.*

    Debtors in Foreign Proceedings.

_____

JOHN JOHNSTON AND RACHELLE FRISBY, *as joint provisional liquidators on behalf of* PB LIFE AND ANNUITY CO., LTD., NORTHSTAR FINANCIAL SERVICES (BERMUDA) LTD., OMNIA LTD., AND PB INVESTMENT HOLDINGS LTD., *and* PB LIFE AND ANNUITY CO., LTD., NORTHSTAR FINANCIAL SERVICES (BERMUDA) LTD., OMNIA, LTD., AND PB INVESTMENT HOLDINGS LTD.,

    Plaintiffs,

– against –

GREGREY EVAN LINDBERG *a/k/a* GREG EVEN LINDBERG, *et al.*,

    Defendants.

**OPINION & ORDER**

23-cv-2604 (ER)

RAMOS, D.J.:

    This is an appeal from the March 10, 2023 order of the bankruptcy court (Beckerman, J.), which stayed an adversary proceeding as against four North Carolina insurance companies ("the NCICs").[1] Doc. 1; AP Doc. 78 ("the Stay Order").[2] The

---

[1] The NCICs consist of Colorado Bankers Life Insurance Company ("CBL"), Bankers Life Insurance Company ("BLIC"), Southland National Insurance Corporation ("SNIC"), and Southland National Reinsurance Corporation ("SNRC").

[2] References to "Bankr. Doc." refer to documents filed in the underlying bankruptcy proceeding, *In re PB Life and Annuity Co., Ltd.*, No. 20-12791 (LGB), (Bankr. S.D.N.Y.). References to "AP Doc." refer to

adversary proceeding was brought on January 4, 2023 against over 970 defendants, including the NCICs, in the Chapter 15 proceedings of PB Life and Annuity Co., Ltd. ("PBLA"), Northstar Financial Services (Bermuda) Ltd. ("Northstar"), Omnia Ltd. ("Omnia"), and PB Investment Holdings Ltd. ("PBIHL") (collectively, "the Debtors")[3] by the Debtors' joint provisional liquidators ("the Liquidators"), John Johnston and Rachelle Frisby. AP Doc. 1.

For the reasons set forth below, the Stay Order is AFFIRMED.

## I.  BACKGROUND

### A. The Debtors' Bermuda Bankruptcy Proceedings Were Recognized as Foreign Main Proceedings in Chapter 15 Petitions

On September 18, 2020, the Bermuda Monetary Authority filed separate petitions on behalf of PBLA, Northstar, and Omnia seeking to wind up each entity and appoint the Liquidators; those petitions were granted by separate orders each dated September 25, 2020. AP Doc. 14-1 (Bermuda Orders). On December 3, 2020, the Liquidators filed Chapter 15 petitions[4] in the United States Bankruptcy Court for the Southern District of New York for recognition of PBLA, Northstar, and Omnia's Bermuda proceedings as foreign main proceedings and moved for the joint administration of the three entities. Bankr. Docs. 1, 8. Also on December 3, 2020, the Liquidators petitioned the Bermuda court to wind up PBIHL and appoint them as its liquidators as well, and that petition was

---

documents filed in the underlying bankruptcy adversary proceeding, *Johnston v. Lindberg*, Adv. Pro. No. 23-01000 (LGB), (Bankr. S.D.N.Y.). References to "Doc." refer to documents filed in the instant appeal.

[3] PBLA and Omnia are both 100% owned by PBX Bermuda Holdings, Ltd., which is in turn owned 100% by Gregrey Evan Lindberg. Likewise, PBIHL and Northstar are both 100% owned by BMX Holdings, LLC, which is in turn owned 100% by Lindberg. The Debtors are thus "horizontal" affiliates within the meaning of § 101(2) of the Bankruptcy Code because they are owned by a common ultimate owner. *In re PBIHL*, No. 21-10623 (LGB), Doc. 7 ¶¶ 10–14.

[4] Chapter 15 proceedings "provide effective mechanisms for dealing with insolvency cases involving debtors, assets, claimants, and other parties of interest involving more than one country. . . . Generally, a chapter 15 case is ancillary to a primary proceeding brought in another country, typically the debtor's home country. . . . An ancillary case is commenced under chapter 15 by a 'foreign representative' filing a petition for recognition of a 'foreign proceeding.' . . . Through the recognition process, chapter 15 operates as the principal door of a foreign representative to the federal and state courts of the United States." *Chapter 15 – Bankruptcy Basics*, USCourts.gov, https://www.uscourts.gov/services-forms/bankruptcy/bankruptcy-basics/chapter-15-bankruptcy-basics (last visited Feb. 21, 2024).

granted by order dated January 8, 2021. AP Doc. 14-1. On December 4, 2020, the Bankruptcy Court granted the motion for joint administration of PBLA, Northstar, and Omnia (Bankr. Doc. 11) and, on January 5, 2021, it also granted recognition of their Bermuda proceedings as foreign main proceedings (Bankr. Doc. 33). On April 2, 2021, the Liquidators filed a Chapter 15 petition for recognition of the PBIHL Bermuda proceeding as a foreign main proceeding and moved for the joint administration of PBIHL with PBLA, Northstar, and Omnia. *In re PBIHL*, No. 21-10623 (LGB), Docs. 1, 7. The same day, the Bankruptcy Court granted the motion for joint administration of all the Debtors (Bankr. Doc. 42) and, on May 4, 2021, it also granted recognition of the PBIHL Bermuda proceeding as a foreign main proceeding (Bankr. Doc. 50).

In effect, these orders collectively signify that PBLA, Northstar, Omnia, and PBIHL's Bermuda proceedings have been recognized as foreign main proceedings in a single jointly administered Chapter 15 proceeding in the United States Bankruptcy Court for the Southern District of New York before Judge Lisa G. Beckerman.

### B. The Liquidators Brought an Adversary Proceeding Naming the NCICs as Defendants

On January 4, 2023, Frisby and Johnston, in their capacity as Liquidators and authorized foreign representatives for the Debtors, brought an adversary proceeding with 41 causes of action and over 970 defendants, including the NCICs ("the Adversary Proceeding"). AP Doc. 1. The 415-page complaint alleges that, from approximately 2017 to 2019, Gregrey Evan Lindberg and several other directors and officers of the Debtors[5] perpetrated a vast and intricate fraudulent scheme to drain over $700 million of the Debtors' liquid assets through sham transactions disguised as legitimate loans and equity investments, leading to the Debtors' insolvency. *Id.* ¶¶ 1–16. And, on June 27, 2019, the defendants executed two contracts that allegedly further impaired the Debtors'

---

[5] The defendants in the adversary proceeding are Lindberg, his associates and co-conspirators, and hundreds of companies alleged to be owned or controlled directly or indirectly by Lindberg, including the NCICs. *Id.* ¶¶ 57–1037.

3

assets and capital: (1) the Interim Amendment to Loan Agreements ("the Interim Amendment") and (2) the Memorandum of Understanding ("the MOU"; with the Interim Amendment, "the Loan Agreements"). *Id.* ¶ 39. The Liquidators allege:

> Under the [Interim Amendment], the NCIC[s], Lindberg, and certain of [Lindberg's co-conspirators] adversely modified the economic terms of over $700 million of debt and preferred equity held by the Debtors by imposing lengthy maturity extensions of up to nine years, interest rate deferrals and reductions, and other waivers, for absolutely no consideration. If the MOU is ever implemented, the NCIC[s] would take control of 511 Lindberg [a]ffiliates, the book value of which is believed to exceed $2 billion, including companies in which the Debtors invested over $700 million. The investments of the Debtors and NCIC[s] are intertwined and in some instances the parties are agents for each other on loan agreements.
>
> The NCIC[s] traded concessions to Lindberg and his companies under the [Interim Amendment] in exchange for a host of benefits they hoped to receive from Lindberg and his companies under the MOU. However, the Debtors were also forced to make significant concessions under the [Interim Amendment], currently estimated to be in excess of $117.8 million (and increasing by approximately $85,2507 with each passing day), for absolutely no consideration. At the time, CBL and SNIC were acting as agents for the Debtors in their capacities as lenders under at least twenty-nine (29) loans to Lindberg [a]ffiliates. CBL and SNIC breached their fiduciary duties owed to the Debtors and breached the implied covenant of good faith and fair dealing by adversely modifying loan terms for their own benefit, and to the Debtors' detriment. Since execution of the [Loan Agreements], CBL and SNIC have continued to breach their fiduciary duties owed to the Debtors as agents by improperly executing transactions for CBL's and SNIC's own benefit, tortiously interfering with the Debtors' contract rights under loan agreements, failing to remit interest due to the Debtors, and charging excessive fees.

*Id.* ¶ 40–41. The Liquidators further argue the Loan Agreements are not enforceable against the Debtors. *Id.* ¶ 42. Accordingly, the Liquidators brought dozens of fraud, contract, tort, and breach of fiduciary duty claims, including claims seeking avoidance of fraudulent transfers and incurred indebtedness, declaratory judgment that the Loan Agreements are invalid, and injunctive relief from the implementation of the MOU. *Id.* ¶¶ 1684–2034.

### C. The NCICs Moved to Stay the Adversary Proceeding, as Against Them, on the Basis that the McCarran-Ferguson Act Requires Reverse Preemption because of the Rehabilitation Action Against them in North Carolina

On January 18, 2023, two weeks after the Liquidators filed the complaint in the bankruptcy court, the NCICs moved to stay the Adversary Proceeding. AP Doc. 7. The NCICs noted that, on June 28, 2019, a North Carolina court granted a petition filed by the Commissioner of Insurance of the State of North Carolina to place the NCICs in a rehabilitation proceeding ("the Rehabilitation Action"), a form of insurance receivership, due to issues with the NCICs' investments.[6] AP Doc. 7-1 (Order of Rehabilitation).[7] As part of that proceeding, the North Carolina court also issued an injunction that, *inter alia*, "prohibit[ed] any person from interfering in any manner with the property or assets of [the NCICs] . . . and further enjoin[ed] and restrain[ed] any person from instituting or prosecuting any suit or other action against . . . the [NCICs'] property except by the prior permission of [the North Carolina court] first had and obtained." *Id.* ¶ 11 ("the Anti-Suit Injunction"). Because the Liquidators had not sought permission from the North Carolina court to institute the Adversary Proceeding against the NCICs, the NCICs argued that the bankruptcy court was required to stay the Adversary Proceeding as against them. AP Doc. 7.

---

[6] North Carolina law empowers the Commissioner of Insurance to file a petition to institute rehabilitation actions against troubled insurance entities, by which the commissioner takes possession of the insurer's assets and administers them under the court's supervision to ameliorate the insurer's financial condition. N.C. Gen. Stat. §§ 58-30-75, 58-30-80. *See also* N.C. DEP'T OF INS., *CBL, BLIC, SNRC Frequently Asked Questions* ¶ 2 (Sept. 30, 2021), https://www.ncdoi.gov/documents/regulatory-actions/frequently-asked-questions-gbig/open ("The [NCICs] were placed into [r]ehabilitation to preserve the assets of the [NCICs] for the protection of policyholders. This was done to protect the overall account values of the [NCICs'] annuity holders and the interests of all policyholders. Due to the issues with the [NCICs'] investments, it was necessary to place the [NCICs] under [c]ourt protection so that the investment issues could be addressed in an orderly fashion by the [Commissioner of Insurance] under [c]ourt supervision. . . . The goal of the [Rehabilitation Action] is to reduce the amount of affiliated investments and to increase the long-term liquidity of the [NCICs].").

[7] Since the inception of the Rehabilitation Action, the North Carolina court found that BLIC and CBL could not be rehabilitated and granted the commissioner's petition to put them in liquidation proceedings. *Causey v. SNIC et al*, No. 19-cvs-8664 (N.C. Super. Ct. Dec. 30, 2022) (Order of Liquidation), https://www.ncdoi.gov/documents/regulatory-actions/blic-and-cbl-order-liquidation-12-30-22/open.

In opposition, the Liquidators argued that, under the Supremacy Clause, the bankruptcy court's automatic stay trumped the Rehabilitation Action and Anti-Suit Injunction.  AP Doc. 14.  The NCICs respond that the McCarran-Ferguson Act provides that the bankruptcy code is reverse preempted, and North Carolina law controls.  AP Doc. 30.  The McCarran-Ferguson Act provides that no congressional act should "invalidate, impair, or supersede" state insurance law.  It requires reverse preemption when three elements are satisfied:  "(1) the federal law does not specifically relate to insurance; (2) the state law is enacted for the purpose of regulating the business of insurance; and (3) the application of federal law to the case might invalidate, impair, or supersede the state law."  *United States Dep't of Treasury v. Fabe*, 508 U.S. 491, 507 (1993).  Following a hearing on February 10, 2023 (Doc. 50), at the direction of the bankruptcy court, the Liquidators filed a sur-reply, in which they argued that the McCarran-Ferguson Act was inapplicable (AP Doc. 59).

### D. The Bankruptcy Court Granted the NCICs' Motion to Stay, Which the Liquidators Appealed

On February 27, 2023, at a subsequent hearing, the bankruptcy court granted the NCIC's motion to stay the Adversary Proceeding as against them.  AP Doc. 69.  After holding that the first two prongs of *Fabe* were met, the bankruptcy court held that the Adversary Proceeding would invalidate, impair, or supersede North Carolina law because the Adversary Proceeding directly conflicts with the Anti-Suit Injunction, and the cases cited by the Liquidators were distinguishable:

> In *Hudson v. Supreme [Enterprises]., Inc.*, the District Court for the Southern District of Ohio dealt with the provision of Ohio law that required "all actions authorized under the Liquidation Act shall be brought in the Court of Common Pleas of Franklin County."
>
> The [c]ourt concluded that applying the federal removal statute would deprive the state court of its jurisdiction and therefore, "would have the effect of invalidating or superseding the applicable Ohio provision." *See* 2007 U.S. Dist. LEXIS 58280, *19 (S.D. Ohio 2007).  *See also State, P. Flowers v. [Tenn. Coordinated] Care Network*, 2005 Tenn. App. LEXIS 114, *17 (Tenn. App. 2005),

6

confirming the bankruptcy court's holding that the operation of the Bankruptcy Code, whether by continuing the automatic stay or by entertaining an inevitable action to determine whether a valid transfer occurred and ownership of the disputed funds invalidates, impairs, or supersedes the grant of exclusive jurisdiction to the Chancery Court of Davidson County under the insurer's Rehabilitation and Liquidation Act.

Various bankruptcy courts have found a conflict between the Bankruptcy Code and an injunction provision under state law in the context of insurance rehabilitation or liquidation satisfies the third prong of the *Fabe* test. *See Advanced Cellular*, 235 B.R. 724; *Davister*, 152 F.3d 1281–1282; and *Munich*, 141 F.3d 585, 594.

In *In re First Assured Warranty Corp*, 383 B.R. 502, 538–539 (Bankr. D. Colo[.] 2007), which was cited to by the [Liquidators], the [c]ourt reviewed a Hawaiian enjoinment action for an insurance company in liquidation proceedings and held that since no action was brought . . . against the insurer or the liquidator, there was no impairment. However, this case is distinguishable because here the [Liquidators] have brought an action against the insurer, the [NCICs].

The Court also finds the *In Re Windhaven Top Insurance Holdings LLC, et al* case to be distinguishable. It's cited at 636 B.R. 596 (Bankr. D. Del. 2021). There the court was faced with a dispute over the ownership of a set amount of funds held in escrow arrangements by the debtor where the sole dispute was whether it was property of the debtor or property of the insurer.

Here the Court is faced with a litigation seeking at least four different types of relief regarding the [NCICs]. Monetary damages, injunctive relief, declaratory judgment, and return or recovery of property. This is not a case where whether a limited amount of escrow funds is property of the Debtor or the [NCICs].

The Court believes that this litigation would impact the State of North Carolina's administrative regime and would impair the North Carolina insurance statute, since the action seeks to avoid the [A]nti-[S]uit [I]njunction, seeks recovery [or] return of assets from the [NCICs], in addition to damages claims.

The Court notes that the rehabilitation order and the liquidation order do not require that the litigation be brought in a particular forum, as other state insurance liquidation statutes require. However, those orders require permission from the North Carolina [c]ourt to bring the litigation.

The rehabilitation order and the liquidation order clearly include an injunction barring any person from instituting or prosecuting an

> action against the [NCICs] without first seeking leave of the North Carolina [c]ourt.
>
> [The Liquidators] did not comply with these orders by obtaining authorizations from the North Carolina [c]ourt and take the view that such requirement conflicts with the Bankruptcy Code.
>
> The Court agrees that it appears to conflict with the Bankruptcy Code, in particular [§] 1508.  However, the existence of the dueling insolvency proceedings and the existence of a conflict support a finding that the third prong of the *Fabe* test has been met because the Bankruptcy Code would invalidate, impair or supersede the North Carolina statute by allowing the [A]dversary [P]roceeding to continue against the [NCICs], but bypassing the North Carolina [c]ourt's oversight and administration of the rehabilitation, proceeding in the form of a gatekeeping role with respect to the litigation.

*Id.* at 43:8–46:22.  On March 10, 2023, the bankruptcy court issued the Stay Order, confirming its decision from the bench to grant the NCIC's motion.  AP Doc. 78.

The Liquidators' instant appeal of the Stay Order followed on March 28, 2023.  Doc. 1.

After the commencement of the appeal, the Liquidators attempted to comply with the Anti-Suit Injunction by seeking leave from the North Carolina court to institute the Adversary Proceeding against the NCICs, but the court denied the Liquidators' request on June 29, 2023 on the basis that "allowing the [Adversary Proceeding] to proceed against [the NCICs] would undermine the rehabilitation and liquidation of [the NCICs] as set forth in Chapter 58 of the North Carolina General Statutes."  Doc. 35-1 ¶ 14.[8]

## II.  LEGAL STANDARD

This Court has jurisdiction to hear appeals from decisions of a bankruptcy court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments,

---

[8] The NCICs requested that the Court take judicial notice of the North Carolina court's June 29, 2023 order, notwithstanding that it was not included in the record on appeal.  Doc. 35 at 1.  The Liquidators stated that they did not oppose the request.  Doc. 37 at 1 n.1.  The Court will therefore consider the June 29, 2023 order as properly before it.

orders, and decrees; . . . [and,] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges." §§ 158(a)(1), (3).

A district court generally reviews the findings of fact of a bankruptcy court under a "clearly erroneous" standard, but conclusions of law are reviewed *de novo*. *See, e.g., Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 988–89 (2d Cir. 1990); *Nova v. Premier Operations, Ltd. (In re Premier Operations)*, 294 B.R. 213, 217 (S.D.N.Y. 2003).

III.   DISCUSSION

The parties agree that the conjunctive three-part test under *Fabe* determines when the McCarran-Ferguson Act requires reverse preemption, and they further agree that the first two elements are met here. Accordingly, the only issue before the Court is whether the Adversary Proceeding "might invalidate, impair, or supersede" North Carolina's laws governing rehabilitation actions for insurance entities.

The Liquidators argue that the "esoteric" McCarran-Ferguson Act is inapplicable here because the Adversary Proceeding "concerns a determination as to whether contested assets are property of the [D]ebtors or a [s]tate-court insurance rehabilitation proceeding," and federal bankruptcy law trumps state law, including the Anti-Suit Injunction, under the Supremacy Clause. Doc. 12 at 13. Moreover, the Liquidators assert that the Adversary Proceeding, at least as against the NCICs, concerns merely questions of "contract formation and enforceability" as to the validity of the Loan Agreements—not questions of insurance law. *Id.* at 15–17. And "[t]here is no blanket reverse preemption simply because insurance is involved." *Id.* at 21 (citations omitted). Rather, courts have repeatedly held that McCarran-Ferguson does not require reverse preemption when the federal proceeding "centers on whether assets are property of the Debtors or an insurance rehabilitation proceeding," and the bankruptcy court gave too little weight to that authority. *Id.* at 22–34 (citing *In re Windhaven Top Ins. Holdings, LLC*, 636 B.R. 596 (Bankr. D. Del. 2021); *In re Frontier Ins. Grp., LLC*, 517 B.R. 496 (Bankr. S.D.N.Y.

9

2014); *In re First Assured Warranty Corp.*, 383 B.R. 502 (Bankr. D. Colo. 2008); *In re Reliance Grp. Holdings*, 273 B.R. 374 (Bankr. E.D. Pa. 2002)). In the absence of reverse preemption, the Supremacy Clause requires that the federal bankruptcy court's automatic stay trump the state Anti-Suit Injunction. *Id.* at 34–41.

The NCICs argue, however, that the Adversary Proceeding would invalidate, impair, or supersede state insurance law, as both the bankruptcy court and North Carolina court have now held. Doc. 34. Moreover, the stay accords with numerous courts that have held that reverse preemption applies to actions against insolvent insurance companies in rehabilitation or liquidation proceedings. *Id.* at 31(citing *Munich Am. Reinsurance Co. v. Crawford*, 141 F.3d 585 (5th Cir. 1998); *Davister Corp. v. United Republic Life Ins. Co.*, 152 F.3d 1277 (10th Cir. 1998); *In re PRS Ins. Grp., Inc.*, 294 B.R. 609 (Bankr. D. Del. 2003), *aff'd* No. 00-4070-MFW, 2005 WL 4121639 (D. Del. Mar. 31, 2005); *In re Med. Care Mgmt. Co.*, 361 B.R. 863 (Bankr. M.D. Tenn. 2003); *In re Amwest Ins. Grp., Inc.*, 285 B.R. 447 (Bankr. C.D. Cal. 2002); *In re Advanced Cellular Sys.*, 235 B.R 713 (Bankr. D.P.R. 1999)). The NCICs contend the Liquidators' cited cases are inapposite, and the bankruptcy court already correctly distinguished them. *Id.* at 42–49. They also sharply reject the Liquidators' characterization of the Adversary Proceeding as solely concerning contract law, contending that the relief the Liquidators seek against the NCICs would, if granted, "wholly undermine their court-supervised rehabilitation and liquidation proceedings, to the extreme detriment of their innocent policyholders." *Id.* at 11–12; *see also id.* at 34–42 (arguing that the Adversary Proceeding would "eviscerate" the NCICs' rehabilitation and liquidation proceedings and is "also an assault on the priority scheme established" in the Rehabilitation Action).

The Supreme Court has held that "[w]hen federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a [s]tate's administrative regime, the McCarran-Ferguson Act does not preclude its application." *Humana Inc. v. Forsyth*, 525 U.S. 299,

310 (1999). The Liquidators are correct that courts have generally held that disputes over the ownership of assets purported to be the property of insolvent insurers' bankruptcy estates do not implicate reverse preemption, even if the resulting federal decision would have a financial impact on the debtors' estate. *See, e.g., In re Windhaven Top Ins. Holdings, LLC*, 636 B.R. at 603–04; *In re Frontier Ins. Grp., LLC*, 517 B.R. at 506; *In re First Assured Warranty Corp.*, 383 B.R. at 540–41 (collecting cases); *In re Reliance Grp. Holdings, Inc.*, 273 B.R. at 404. The NCICs are also correct, however, that even such ownership disputes *will* be reverse preempted if the relevant state law provides for the state court to be the exclusive forum to prosecute any actions against the insolvent estate or its assets and authorizes the state court to issue injunctions to effectuate such exclusivity. *See, e.g., Munich Am. Reinsurance Co.*, 141 F.3d at 595; *Davister*, 152 F.3d at 1281; *Hudson v. Supreme Enters., Inc.*, No. 06-cv-795, 2007 U.S. Dist. LEXIS 58280, at *19–20 (S.D. Ohio Aug. 9, 2007); *In re Advanced Cellular Sys.*, 235 B.R. at 724–25; *In re Med. Care Mgmt. Co.*, 361 B.R. at 876; *State ex rel. Flowers v. Tenn. Coordinated Care Network*, No. M2003-01658-COA-R3-CV, 2005 Tenn. App. LEXIS 114, at *16–17 (Tenn. Ct. App. Feb. 23, 2005). None of the Liquidators' cited cases concerning ownership disputes involved state laws with similar schemes that deemed the state courts to be the exclusive fora and enjoined all other proceedings.

In other words, the Liquidators have cited no cases that address the specific factual situation presented here; their arguments contemplate only the Rehabilitation Action and Adversary Proceeding but disregard the implications of the Anti-Suit Injunction. Thus, although the Liquidators are correct that ownership disputes *generally* are not reverse preempted, even such ownership disputes *are* reverse preempted when, as here, the state court is meant to be the exclusive forum for proceedings against the insolvent estate.

Consequently, here, even if the Liquidators are correct that the Adversary Proceeding is merely an anodyne contract dispute (which the Court declines to decide), it

11

is besides the point.  Regardless of the nature or breadth of the Adversary Proceeding, the Anti-Suit Injunction requires reverse preemption.  The bankruptcy court was therefore correct to stay the proceedings against the NCICs accordingly.

## IV.     CONCLUSION

For the reasons set forth above, the Order of the Bankruptcy Court is AFFIRMED.

The Clerk of Court is respectfully directed to terminate the appeal (Doc. 1) and close the case.

It is SO ORDERED.

Dated:    February 22, 2024
          New York, New York

                                                        _____
                                                        EDGARDO RAMOS, U.S.D.J.